# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BESSIE STRATTON, et al.,** | * | |
| Plaintiffs, | * | |
| v. | * | CIVIL NO. JKB-17-3574 |
| **NATIONWIDE SOLUTIONS, LLC, et al.,** | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

This case arises out of a multi-fatality automobile accident. Plaintiffs, family members of the decedents, have asserted claims of negligence and wrongful death against multiple Defendants: Yvenet Mayette, the driver of the tractor-trailer involved in the accident; Nationwide Solutions, LLC, Mayette's employer and owner of the tractor-trailer; Bridge Transport Co. Inc., Blue Marlin Logistics, LLC, and Blue Marlin Logistics Group, Inc., the alleged brokers of the transportation agreement covering the shipment Mayette was transporting; and Stein Fibers, Ltd., the shipper whose products were being transported by Mayette. (Am. Compl. at ¶¶ 29, 35, 64, ECF No. 20.) Defendants removed the case from the Circuit Court for Baltimore City to federal court on December 1, 2017. (Notice of Removal, ECF No. 1.) While considering the parties' motions, the Court identified an apparent defect in federal subject matter jurisdiction and directed any party asserting that the Court nonetheless retained jurisdiction to submit briefs to that effect. (Letter Order, Aug. 21, 2018, ECF No. 59.) Stein Fibers, the sole non-diverse defendant, submitted a brief in support of jurisdiction. (Stein Mem. in Supp. Subject Matter Jurisdiction, ECF No. 60 ["Stein S.M.J. Mem."].)

"Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). Therefore, the Court need not await a party's motion to inquire into the basis of its subject matter jurisdiction. No hearing is required. *See* Local Rule 105.6 (D. Md. 2016). For the reasons set forth below, this Court lacks subject matter jurisdiction. Accordingly, the case will be remanded to the Circuit Court for Baltimore City.

## I. Background

Plaintiffs' Complaint alleges that, on January 10, 2015, a car driven by Zarissa Ayres and a tractor-trailer driven by Defendant Mayette were involved in a highway collision in Queen Anne's County, Maryland. (Am. Compl. at ¶¶ 24, 29–30.) According to the Complaint, Zarissa Ayres, who was eight months pregnant at the time, and four passengers, Jordan Nicole Ayres, Jonathan Stratton-Ayres, Travis Stratton, and Regina Ayres, all died as a result of injuries sustained in the collision. (*Id.* at ¶ 31; *see also id.* at ¶ 13.)

Plaintiffs, individually and in their respective capacities as administrators of the decedents' estates, filed an Original Complaint on September 26, 2017. (Case Docket at 1, Ex. 1 to Stein Mot. Dismiss Compl., ECF No. 12-1.) It alleged seven counts against Defendants: negligence, against Mayette (Count I); negligent entrustment and maintenance, against Nationwide (Count II); negligent hiring, training, retention, and supervision, against Nationwide (Count III); negligent hiring, monitoring, and retention, against Bridge Transport, both Blue Marlin entities, and Stein Fibers (Count IV); agency liability for the allegedly negligent acts of Mayette and Nationwide, against Bridge Transport, both Blue Marlin entities, and Stein Fibers (Count V); and wrongful death, against all defendants (Counts VI and VII). (Compl. at 7-23, ECF No. 2.)

On November 11, 2017, Plaintiffs amended their complaint. (Case Docket at 3.) The Amended Complaint added one new Plaintiff, Brian Stone, the father of Zarissa Ayres's unborn child. (Am. Compl. at ¶¶ 13–14.) It also added counts on his behalf related to the death of the unborn child. (*Id.* at ¶¶ 31, 85–98.)

According to the Amended Complaint, Plaintiffs Bessie Stratton, Leon Ayres, and Zanetta Ayres are residents of Virginia (*id.* at ¶¶ 1, 8–9); Plaintiff Gregory Cobb is a resident of Maryland (*id.* at ¶ 3); and Plaintiff Brian Stone is a resident of New York (*id.* at ¶ 13). According to the Amended Complaint, Defendant Mayette is a foreign national and resident of Delaware (*id.* at ¶ 17); Defendant Nationwide is an Illinois limited liability corporation (*id.* at ¶ 16); Defendants Bridge Transport and both Blue Marlin entities are corporate residents of Georgia (*id.* at ¶¶ 18–20); and Defendant Stein Fibers is a New York corporation (*id.* at ¶ 21).

On December 1, 2017, after Plaintiffs had filed their Amended Complaint, but before it was served on all Defendants, Defendants removed the case to federal court, relying on the Original Complaint and purporting diversity jurisdiction. (Notice of Removal at ¶ 3; *see also* Case Docket at 3 (docketing a request to reissue summons as to the Amended Complaint on November 30, 2017, but no entries indicating service of process prior to the Notice of Removal).) Approximately six weeks after removal, counsel for Defendants alerted the Court to the existence of the Amended Complaint, and it was docketed accordingly. (Correspondence re Am. Compl., Jan. 19, 2018, ECF No. 17.) During the months following removal, the parties filed various motions. (*See* Stein Mot. Dismiss Compl., ECF No. 11 ["Stein First Mot. Dismiss"]; Pl. Mot. Amend, ECF No. 25; Joint Mot. Dismiss, ECF No. 27 (filed by Defendants Mayette and Nationwide); Stein Mot. Dismiss Am. Compl., ECF No. 37.) However, none of

these motions, and none of the briefs filed in support or opposition to them, raised the question of subject matter jurisdiction.

On August 21, 2018, the Court alerted the parties that complete diversity appeared to be lacking, because Plaintiff Stone was alleged to be a New York resident and Defendant Stein Fibers was alleged to be a New York corporation. (Letter Order at 1.) The Court ordered any party arguing in support of federal subject matter jurisdiction to submit briefs to that effect. (*Id.* at 2.) Defendant Stein Fibers filed a brief in support of the Court's jurisdiction. (Stein S.M.J. Mem. at 1.) Stein Fibers does not dispute the lack of diversity between itself and Plaintiff Stone, but, rather, argues that it was fraudulently joined. (*Id.*) Accordingly, Stein Fibers argues that this Court should retain jurisdiction under the doctrine of fraudulent joinder and dismiss the claims against it, after which, all remaining parties would be diverse. (*Id.*) No other party submitted a brief in support of the Court's jurisdiction.

## II. Legal Standards

### A. Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Wheeling Hosp., Inc. v. Health Plan of Upper Ohio Valley, Inc.*, 638 F.3d 577, 583–84 (4th Cir. 2012). Federal courts must "presume 'that a cause lies outside [its] limited jurisdiction, . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction.'" *Barbour v. Int'l Union*, 640 F.3d 599, 605 (4th Cir. 2011) (en banc) (quoting *Kokkonen*, 511 U.S. at 377), *superseded on other grounds by* 28 U.S.C. § 1446(b)(2)(B).

4

An action brought in a state court may be removed to federal court only if the district court would have had original jurisdiction over it. *See* 28 U.S.C. § 1441(a). The primary bases of the federal courts' original subject matter jurisdiction are federal question jurisdiction, *see* 28 U.S.C. § 1331, and diversity jurisdiction, *see* 28 U.S.C. § 1332. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Removal jurisdiction must be "construe[d] . . . strictly because of the 'significant federalism concerns' implicated." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (en banc) (quoting *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941) (quoting *Healy v. Ratta*, 292 U.S. 263, 270 (1934)) ("Due regard for the rightful independence of state governments . . . requires that [federal courts] scrupulously confine their own jurisdiction to the precise limits which the statute has defined."). "Doubts about the propriety of removal should be resolved in favor of remanding the case." *Barbour*, 640 F.3d at 605; *see also Dixon*, 369 F.3d at 816 ("If federal jurisdiction is doubtful, a remand [to state court] is necessary."); *Lexington Market, Inc. v. Desman Assocs.*, 598 F. Supp. 2d 707, 709 (D. Md. 2009) ("[A]ll doubts are resolved in favor of remand.").

### B. *Fraudulent Joinder*

Under the doctrine of fraudulent joinder, a district court may "disregard, for jurisdictional purposes, the citizenship of certain non[-]diverse defendants, assume jurisdiction over a case, dismiss the non[-]diverse defendants, and thereby retain jurisdiction." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). The doctrine is an exceptional one, applying only where a removing party can show either "'outright fraud in the plaintiff's pleading of jurisdictional facts'

5

or that 'there is *no possibility* that the plaintiff would be able to establish a cause of action against the [non-diverse] defendant in state court.'" *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015) (quoting *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999)). Mere doubts about the strength of a claim are insufficient. *Riverdale Baptist Church v. Certainteed Corp.*, 349 F. Supp. 2d 943, 948 (D. Md. 2004). Rather, to establish fraudulent joinder, it must be clear that, "under the law of the state in which the action is brought, the facts asserted by the plaintiff . . . *could not possibly create . . . liability[,] [such] that the assertion of the cause of action is as a matter of local law plainly a sham and frivolous.*" *Id.* (quoting *Parks v. N.Y. Times Co.*, 308 F.2d 474, 477 (5th Cir. 1962)).

"The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Johnson,* 781 F.3d at 704 (quoting *Hartley*, 187 F.3d at 424). The standard "heavily favors" plaintiffs, who must show only a "glimmer of hope" of succeeding. *Id.* (quoting *Mayes*, 198 F.3d at 466). The standard for assessing fraudulent joinder is "even more favorable to the plaintiff" than the standard on a motion to dismiss. *Id.* (quoting *Hartley*, 187 F.3d at 424).

### III. Analysis

As the party asserting federal subject matter jurisdiction, Stein Fibers bears the heavy burden to establish fraudulent joinder. *Kokkonen*, 511 U.S. at 377; *Johnson*, 781 F.3d at 704. There has been no allegation of fraud in the pleadings of jurisdictional facts; rather, the assertion is that Plaintiffs have no possibility of success on their claims against Stein Fibers. (Stein S.M.J. Mem. at 4–5.) Those claims include negligent hiring, monitoring, and retention; agency or respondeat superior liability for the negligent acts of Mayette and Nationwide; and derivative wrongful death claims. (Am. Compl. at 15–23.) According to Stein, none of these claims has a

chance of succeeding because "there can be no negligence where there is no duty that is due." (Stein S.M.J. Mem. at 5 (quoting *Remsburg v. Montgomery*, 831 A.2d 18, 26 (Md. 2003)).) Stein Fibers further argues that the lack of any such duty is conclusively established by Plaintiffs' failure "to point to any case or authority in Maryland or elsewhere that imposes a duty on a remote shipper who retains a broker to hire and select a carrier to ship goods." (*Id.* at 5.)

The Court disagrees. Plaintiffs' failure to cite Maryland case law squarely deciding a directly analogous case in their favor is not dispositive. Under a fraudulent joinder analysis, Plaintiffs do not bear the burden of demonstrating a likelihood of success; it is Stein Fibers that must show that Plaintiffs do not have even a "glimmer of hope" of establishing liability under state law. *Mayes*, 198 F.3d at 466. Here, Stein Fibers has not identified any case that expressly forecloses liability under Maryland law in these circumstances. *See Hartley*, 187 F.3d at 424 (rejecting fraudulent joinder where no state case had "squarely held" that the governing substantive law "foreclose[d] [plaintiff's] claims").

Stein Fibers also contends that Plaintiffs rely on cases addressing "the duty of a party who *directly hires* the ultimate carrier," and that, in this case, it was the alleged broker intermediaries—not Stein Fibers—who hired the carrier. (Stein S.M.J. Mem. at 6.) Stein Fibers suggests that the imposition of liability as to the brokers in such cases translates into a rejection of liability as to the shipper. (*See, e.g.*, *id.* (arguing that the lack of a direct hiring relationship is "dispositive"); Stein First Mot. Dismiss Reply at 6, 8, ECF No. 44 (arguing that such cases are "strictly limited to duties owed by brokers" and "fail to address a duty of a remote shipper")[1].) However, far from ruling out liability as to the shipper, many of these cases do not address the duty of a shipper at all. For example, in *Schramm v. Foster*, a case heavily cited by both sides,

---

[1] In its subject matter jurisdiction brief, Stein Fibers incorporated by reference its arguments in briefs in support of its two previously filed motions to dismiss and its brief in opposition to Plaintiffs' motion to amend. (Stein S.M.J. Mem. at 5, n.3 (referring to ECF Nos. 12, 37, 40, 44, and 54).)

7

"the shipper involved . . . was not even a named defendant in the lawsuit." (Stein First Mot. Dismiss Reply at 5 (citing *Schramm*, 341 F. Supp. 2d 536 (D. Md. 2004)).) *Schramm* could not possibly have held that liability could not attach to such a shipper when that question was not even before the court.

Nor does Stein point to language in *Schramm* or any other case applying Maryland law that purports to impose—or even discusses approvingly—a bright line rule against liability for a shipper in Stein's position. The *Schramm* court's denial of summary judgment for the defendant was not based on a bright-line rule linked to the defendant's status as the directly hiring party, but rather on multiple, specific factual circumstances in that case. For example, the court pointed to evidence suggesting that the defendant had actual knowledge of the carrier's questionable safety record, *Schramm*, 341 F. Supp. 2d at 552, that the defendant's marketing and operational policies functioned to "actively interject[] itself into the [shipping] relationship," *id.* at 553, that interstate motor carrier transportation is a "context heavily tinged with public interest," *id.*, and that the defendant's own actions "increased the risk of harm to innocent third parties," *id.* at 552. Similarly, in *Perry v. Asphalt & Concrete Services, Inc.*, the defendant-shipper directly hired the allegedly negligent carrier, but the court affirmed judgment against the plaintiff on causation grounds. 133 A.3d 1143, 1159 (Md. 2016). The nature and extent of the hiring employer's duty was not the question before the court, and nowhere does the opinion suggest that the existence of a direct hiring relationship is a necessary or dispositive factor in the viability of the negligence claim.

Other cases similarly suggest that the question of whether a duty of reasonable care exists under Maryland law turns on fact-laden inquiries into the specific circumstances of a case:

> In determining the existence of a duty, we consider, among other things: 'the foreseeability of harm to the plaintiff, the degree of

> certainty that the plaintiff suffered an injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.'

*Remsburg v. Montgomery*, 831 A.2d at 26 (quoting *Bobo v. State.*, 697 A.2d 1371, 1375 (1997)); *see also Wells v. Gen. Elec. Co.*, 807 F. Supp. 1202, 1204–05 (D. Md. 1992) ("[While] it is axiomatic that there is no liability in negligence absent the breach of a duty[,] . . . [i]t is also axiomatic that the duty depends not only upon the status of the parties, but also upon the facts and circumstances of the particular case . . . .").

In this case, Plaintiffs have alleged, *inter alia*: that the transportation of goods in interstate commerce by truck is an activity involving a clear risk of harm to the public (Am. Compl. at ¶¶ 71–72); that reasonable monitoring of publicly available safety statistics would have given Stein Fibers reason to know of Mayette's and Nationwide's poor track record on safety (*id.* at ¶¶ 67–69); that Stein Fibers exercised control over Mayette and Nationwide through the imposition of specific "rules, regulations, and requirements" related to "pick-up, transport, and delivery" sufficient to impose a duty to so monitor their performance (*id.* at ¶¶ 80–81); and that Stein Fibers failed to monitor them accordingly (*id.* at ¶¶ 70–71).

Construing the law and the facts in the light most favorable to Plaintiffs, as the Court must in a fraudulent joinder analysis, *Johnson,* 781 F.3d at 704, the Court finds that this case involves a good faith claim of negligence in novel factual circumstances not previously decided by Maryland courts. A good faith claim to extend existing law to novel facts is not "plainly a sham and frivolous." *Riverdale Baptist Church*, 349 F. Supp. 2d at 948. "Because all legal uncertainties are to be resolved in the plaintiff's favor in determining whether fraudulent joinder

9

exists, a truly 'novel' issue . . . cannot be the basis for finding fraudulent joinder." *Hartley*, 187 F.3d at 425. That this novel question turns on substantive law that itself requires a fact-laden inquiry into the specific circumstances of a case further weighs against finding fraudulent joinder here. *See id.* at 424–25 (rejecting fraudulent joinder where, under the governing substantive law, "the presence or absence of [the necessary] element[s] often depends on several variables [that] may require factual investigation"). The Court need not be convinced that Maryland courts will in fact recognize the duty Plaintiffs allege, that Plaintiffs will succeed on their theories, or even that their claims will survive a motion to dismiss, to reject Stein Fibers's contention that it has been fraudulently joined. *Johnson,* 781 F.3d at 704 (quoting *Hartley*, 187 F.3d at 424).

Stein Fibers makes two other arguments in support of jurisdiction, neither of which changes the Court's conclusion. First, Stein Fibers cites cases outside of the Fourth Circuit that have required that a plaintiff's chance of success be "reasonable, not merely theoretical," in order to survive a claim of fraudulent joinder. *See, e.g.*, *Am. Mut. Liability Ins. Co. v. Flinkote Co.*, 565 F. Supp. 843 (S.D.N.Y. 1983); *see also Bourne v. Wal-Mart Stores, Inc.*, 528 F. Supp. 2d 828, 835 (E.D. Tex. 2008). (Stein S.M.J. Mem. at 4.) Stein Fibers has failed to identify any case law binding on this Court that applies such a test, but, even if it had, a "reasonable basis" test would not change the outcome. The Court finds that Plaintiffs have pled a good faith claim to extend current negligence principles under Maryland law to novel circumstances that have not previously been considered and rejected by Maryland courts. That is sufficient to provide a reasonable, not merely theoretical, basis for the claim.

Second, Stein Fibers argues that remand to state court would be "highly prejudicial," because it would deny the diverse defendants their "statutory right to removal" under 28 U.S.C. § 1441(b). (Stein S.M.J. Mem. at 7.) That statutory right to removal, however, is expressly

limited to cases in which the federal court would have had original subject matter jurisdiction. § 1441(a). There is no such jurisdiction here. Accordingly, there is no prejudice in denying something to which defendants have no right under the statute. To the extent that Stein Fibers suggests there may be an inherent prejudice in the mere fact of requiring diverse defendants to litigate in state court, the Court squarely rejects that argument. The federal courts' diversity jurisdiction is not exclusive, and the removal right is not absolute. The right to remove on the basis of diversity is restricted to out-of-state defendants, § 1441(b)(2), only in cases involving complete diversity, 28 U.S.C. § 1332(a), and only within one year of the filing of the complaint, 28 U.S.C. § 1446(c)(1). Thus, the federal policy underlying removal jurisdiction plainly anticipates that state courts will regularly hear and regularly resolve cases involving diverse defendants. Far from providing a presumptive right to removal for all diverse defendants, the removal right has been strictly construed such that there is actually a presumption *against* exercising removal jurisdiction. *See, e.g.*, *Dixon*, 369 F.3d at 816; *Lexington Market*, 598 F. Supp. 2d at 709; *cf. Shamrock Oil & Gas Corp.*, 313 U.S. at 109; *Kokkonen*, 511 U.S. at 377.

Defendant Stein Fibers has failed to carry its heavy burden of demonstrating fraudulent joinder. Therefore, complete diversity is lacking, and this Court lacks subject matter jurisdiction.

## IV. *Conclusion*

For the foregoing reasons, an Order shall enter remanding the case to the Circuit Court of Baltimore City. Because this Court lacks subject matter jurisdiction over the case, the Court cannot rule on any other motions previously filed by the parties.

DATED this 27th day of September, 2018.

                                                        BY THE COURT:

                                                        _____/s/_____
                                                        James K. Bredar
                                                      Chief Judge